13.

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2004 APR 22 PM 4 13

Charles Gundlah, Jr.,      :
            Plaintiff,     :
                           :
    v.                     :      File No. 1:03-CV-309
                           :
Charles Remick,            :
District Manager, Vermont  :
Department of Corrections, :
            Defendant.     :

BY _____
CLERK

DEPUTY CLERK

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 5 and 6)

Plaintiff Charles Gundlah, Jr., a Vermont inmate currently incarcerated in Florida and proceeding *pro se* and *in forma pauperis*, brings this civil rights action claiming that he has been denied access to Vermont legal materials. Gundlah claims that he requires these materials in order to bring negligence and statutory claims against undisclosed prison authorities. The defendant has moved to dismiss the complaint (Paper 5), arguing that Gundlah lacks standing and that his claim is without merit. For the reasons set forth below, I recommend that the motion to dismiss be DENIED without prejudice, and that Gundlah be given an opportunity to amend his complaint.[1]

---

[1] Also pending before the Court is Gundlah's motion requesting that the defendant be served by the U.S. Marshals (Paper 6). Court records show that a waiver of service was filed on February 2, 2004. Accordingly, Gundlah's motion for service is DENIED as moot.

13.

<u>Background</u>

For the purpose of the defendant's motion to dismiss, the facts in the complaint will be accepted as true. Gundlah alleges that he was transferred from Vermont to Florida in July, 1998.  In 2000, he contacted a legal assistant at the Vermont Department of Corrections and requested "the Vermont Rules of Civil Procedure, Vermont Statutes which pertained to [the Department of Corrections], and the Vermont Appellate Rules of Procedure . . . ." (Paper 5 at 5a).  The purpose of his request was "to learn how to litigate a state tort negligence claim he wished to file, as well as to know the laws that were passed concerning the procedures that the [Department of Corrections] must follow."  <u>Id.</u>

Gundlah alleges that he repeated his request on several occasions, but each time was denied.  He further claims that the materials he requested are the same materials provided to those inmates who remain incarcerated in Vermont.  <u>Id.</u> at 5b.  For relief, Gundlah seeks to have access to the requested materials, and asks that the defendant pay his court costs.  <u>Id.</u> at 6.

2

Discussion

I.   Motion to Dismiss Standard

On a motion to dismiss, the Court must read the plaintiff's complaint with generosity.  See Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). Taking the allegations in the complaint as true, the court must construe the complaint in the light most favorable to the plaintiff, and must draw all inferences in the plaintiff's favor.  See Warth v. Seldin, 422 U.S. 490, 502 (1975); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989). The complaint must not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

There is an important difference between disposing of a case on a motion to dismiss and resolving the case later in the proceedings, for example by summary judgment.  See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  In a motion to dismiss, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Id.

3

(citations and internal quotation marks omitted).  Moreover, *pro se* complaints are to be construed more liberally than complaints drafted by trained attorneys.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A *pro se* complaint should not be dismissed for inartful pleading unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief.  <u>Id.</u> at 521. Finally, it is particularly important to read a *pro se* complaint liberally where, as here, it alleges a civil rights violation.  <u>See Thompson v. Carter</u>, 284 F.3d 411, 416 (2d Cir. 2002); <u>Morales v. Mackalm</u>, 278 F.3d 126, 130 (2d Cir. 2002) (per curiam).

II.  <u>Access to Legal Materials</u>

It is well settled that prisoners have a constitutionally protected right to access the courts.  <u>See</u> <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).  The Supreme Court has held that this right requires prison officials to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  <u>Id.</u> at 828.  In <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996), the Supreme Court limited the broad holding in

4

Bounds, stating that prisons need only provide the tools inmates need to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." The Lewis Court reasoned that while inmates are entitled to meaningful access to the courts, they are not guaranteed "the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Lewis, 518 U.S. at 355. Any limitation on a prisoner's capacity to litigate beyond a challenge to his sentence or a civil rights claim to "vindicate 'basic constitutional rights' . . . is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id.

The Lewis Court also held that a prisoner claiming a denial of access to legal materials must show an actual injury, a requirement that "derives ultimately from the doctrine of standing." Id. at 349. For example, an inmate might show that "a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably

5

actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." <u>Id.</u> at 351. The Court added that, in order to show actual injury, the inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." <u>Id.</u> at 353.

In this case, the complaint claims only that Gundlah requires legal materials to research a potential negligence action, as well as laws relating to Department of Corrections procedure. There is no indication in the complaint that Gundlah is seeking to challenge his sentence or bring a constitutional claim relating to his conditions of confinement. Nor does the complaint explain why Gundlah has been unable to file his claim without these materials. Consequently, the defendant has moved to dismiss the complaint, arguing (1) that Gundlah failed to explain how the lack of legal materials prevented him from bringing a claim, and (2) that Gundlah's proposed litigation is not related to "state or federal post-conviction relief or to civil rights violations pertaining to conditions of confinement." (Paper 7).

In his opposition to the motion to dismiss, Gundlah

6

elaborates on his claims.  He first argues that without access to "legal references to direct him on forms, claims, procedures, etc." he would be "disabled from the outset" in any state court action.  (Paper 9 at 1).  Gundlah further argues that to force him to file a complaint while ignorant of state law and procedure would be a waste of judicial time and resources.

Although Gundlah's complaint does not detail how his lack of access to Vermont legal materials has hindered his ability to file a complaint, such hindrance may be implied from a liberal reading of his *pro se* allegations.  The complaint states that Gundlah finds himself in a "dilemma," since he "needs to file a state tort negligence action" but does not know how to do so because he has "no access to the Vermont Rules of Civil Procedure."  (Paper 5 at 5).  Gundlah also asserts that he needs access to certain Vermont statutes so that he can assert a statutory cause of action. These claims are in line with the <u>Lewis</u> decision's example of a litigant who is so "stymied" by his lack of access to legal materials that he cannot file a complaint.  <u>Id.</u> at 351.  Therefore, this Court should find that Gundlah has satisfied this portion of the actual injury requirement.

The defendant's second argument is that Gundlah's proposed claims are not the types of claims that entitle him to access legal materials. In Lewis, the Court explained that "the injury requirement is not satisfied by just any type of frustrated legal claim." Id. at 354. The Court went on to note that, in previous cases, the right of access to the courts was first limited to direct appeals from convictions, and was then extended "only slightly, to 'civil rights actions' -- i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" Id. at 355 (quoting Wolff v. McDonnell, 418 U.S. 539, 479 (1974)). The defendant, therefore, argues that Gundlah does not have a constitutional right of access to the courts for negligence and statutory claims against Department of Corrections defendants.

The federal circuit courts of appeals are split on the question of whether a prisoner's right to access the courts to bring a conditions of confinement claim is limited to civil rights actions. Compare Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000) (right of access to courts not limited to civil rights claims) with Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) ("a

8

prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."). In the Second Circuit, however, the rule is that the right to access the courts and bring such claims extends beyond claims brought pursuant to 42 U.S.C. § 1983. Friedl, 210 F.3d at 87.

In Friedl, the plaintiff was a prisoner who spent most nights at his home and participated in a work-release program. He was subsequently disciplined by state officials for applying for public assistance, food stamps and Medicaid while still under the control of the corrections system. Plaintiff sued for retaliation claiming, inter alia, that his right to bring his administrative claim for benefits was constitutionally protected. The Second Circuit agreed, noting that the plaintiff's administrative claim, "though it involved no civil rights claim, plainly implicated the conditions of his confinement: he wanted to discover whether, as a result of his status as a participant in the work release program, he was entitled to public assistance benefits." 210 F.3d at 86-87. The Friedl court, noting the split in the circuits, also stated that "[n]othing in Lewis forecloses an administrative challenge by a prisoner to the

9

conditions of his confinement, and we decline to follow the restrictive interpretation placed on <u>Lewis</u> by the Sixth Circuit in <u>Thaddeus-X</u>, since not every 'challenge to the conditions of confinement' takes the form of a civil rights action." <u>Id.</u> at 86.

While the facts of <u>Friedl</u> are not precisely on point, the Second Circuit's language in that case has nonetheless opened the door to access claims for non-civil rights conditions of confinement cases. Therefore, the defendant cannot rely on the simple fact that Gundlah's proposed claims lie outside 42 U.S.C. § 1983. Gundlah explains in his opposition to the motion to dismiss that "being treated negligently by [Department of Corrections] personnel while in their custody and control is a 'condition of plaintiff's confinement,'" and that such treatment will be the subject of his proposed negligence claim. (Paper 9 at 5). Had Gundlah made a similar allegation in his complaint, and assuming that the negligence claim was not frivolous, the Court might be able to conclude under <u>Friedl</u> that he had stated a claim for access legal materials.

A fundamental problem in this case, however, is that Gundlah's complaint is void of any allegation that his

10

proposed tort or statutory claims would relate the
conditions of his confinement.  Similarly, the complaint
fails to demonstrate that his claims would be nonfrivolous.
When considering a motion to dismiss, a court must exclude
additional materials and decide the case on the complaint
alone.  See Friedl, 210 F.3d at 83.  Indeed, it is
reversible error for a district court to rely on "factual
allegations contained in legal briefs or memoranda."  Id.
(citing Fonte v. Bd. or Managers of Continental Towers
Condominium, 848 F.2d 24, 25 (2d Cir. 1988)).  Therefore,
Gundlah's explanations of his claims in his opposition
memorandum cannot be considered.

　　Notwithstanding the shortcomings of Gundlah's
complaint, outright dismissal of his claims would be
premature.  In a case where dismissal might normally be
proper, a pro se litigant should be given an opportunity to
amend his complaint "at least once when a liberal reading of
the complaint gives any indication that a valid claim might
be stated."  Branum v. Clark, 927 F.2d 698, 705 (2d Cir.
1991); see also Davis v. Goord, 320 F.3d 346, 352 (2d Cir.
2003).  Giving Gundlah's complaint the required liberal
reading, it is apparent that the complaint's primary failure

11

is not an obvious lack of merit, but instead a lack of detailed allegations to support his legal claims.  The essence of Gundlah's claim is that he was wrongfully denied legal materials.  To succeed on such a claim, as set forth above, Gundlah must show that his proposed legal actions are meritorious and relate to the conditions of his confinement. Gundlah's current complaint only goes part of that distance. The complaint is obviously drafted by a prisoner, and appears to be seeking information to assist him with claims against his custodians.  With more detailed pleading, and depending upon the precise nature of the proposed claims, he may be able to show that he has a constitutional right to access to the requested materials.  Accordingly, I recommend that the motion to dismiss be DENIED without prejudice, and that Gundlah be given an opportunity to amend his complaint.

### Conclusion

For the reasons set forth above, I recommend that the defendant's motion to dismiss (Paper 5) be DENIED without prejudice, and that Gundlah be given 30 days to amend his complaint.  The Court should also warn Gundlah that a failure to amend his complaint in accordance with the Court's order may result in the dismissal of his claims.

12

AO 72A
(Rev.8/82)

Finally, Gundlah's motion for service (Paper 6) is DENIED as moot.

Dated at Burlington, in the District of Vermont, this 21 day of April, 2004.

Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

AO 72A
(Rev.8/82)